# Illinois Official Reports

## Supreme Court

---

### *Better Government Ass'n v. Illinois High School Ass'n*, 2017 IL 121124

---

| | |
|---|---|
| Caption in Supreme Court: | BETTER GOVERNMENT ASSOCIATION, Appellant, v. ILLINOIS HIGH SCHOOL ASSOCIATION *et al.*, Appellees. |
| Docket No. | 121124 |
| Filed | May 18, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Mary L. Mikva, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Matthew Topic and Joshua Burday, of Loevy & Loevy, of Chicago, for appellant. |
| | David J. Bressler, Rosa M. Tumialán, and Melanie J. Chico, of Dykema Gossett PLLC, of Lisle, for appellee Illinois High School Association. |
| | Jeffrey C. Goelitz and Vanessa V. Clohessy, of Hodges, Loizzi, Eisenhammer, Rodick & Kohn LLP, of Arlington Heights, for appellee Consolidated High School District 230. |
| | Donald M. Craven, of Springfield, for *amici curiae* Illinois Press Association *et al.* |

Michele Odorizzi and Joseph M. Callaghan, of Mayer Brown LLP, Vincent D. Pinelli, of Burke Burns & Pinelli, Ltd., and Darka Papushkewych and Daniel P. Blondin, all of Chicago, for *amici curiae* Metropolitan Pier & Exposition Authority *et al.*

| Justices | JUSTICE THEIS delivered the judgment of the court, with opinion. Chief Justice Karmeier and Justices Freeman, Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion. |

## OPINION

¶ 1   In this appeal, the primary issue we are asked to consider is whether the Illinois High School Association (IHSA), which governs and coordinates interscholastic athletic competitions for public and private secondary schools in Illinois, is a "public body" as defined by the Freedom of Information Act (FOIA) (5 ILCS 140/2 (West 2014)) and, alternatively, whether certain requested records of the IHSA should be considered "public records" of Consolidated High School District 230 (District 230 or the District), a public body, for purposes of section 7(2) of the FOIA (5 ILCS 140/7(2) (West 2014)). The Cook County circuit court held the IHSA was not a public body subject to the FOIA and that District 230 had no obligation to obtain and disclose the requested IHSA records under section 7(2). The appellate court affirmed. 2016 IL App (1st) 151356. For the following reasons, we affirm the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3   Founded in 1900, the IHSA is a private, not-for-profit, unincorporated association with over 800 public and private high school members located throughout Illinois. Its purpose, as stated in its constitution, is to "provide leadership for the development, supervision, and promotion of interscholastic competition and other activities in which its member schools engage." In keeping with that purpose, the IHSA performs two primary functions: (1) it establishes bylaws and various rules for interscholastic sports competition and is charged with enforcement of those rules, and (2) it sponsors and coordinates various postseason tournaments for certain sports in which its member schools choose to compete.

¶ 4   According to the IHSA constitution, any private or public high school in the state may join the IHSA if it agrees to abide by the IHSA rules. Although currently public schools comprise roughly 85% of the IHSA's membership, there is no requirement that public schools constitute a certain percentage of the membership and no requirement that public schools join the IHSA. The IHSA does not govern all sports or extracurricular activities of the member schools. It does not supervise intramural sports or most club sports. It is also not involved in arranging or organizing regular season interscholastic contests among the member schools.

¶ 5   Under its constitution, the administrative authority of the IHSA is vested in a volunteer, 10-member board of directors elected by the collective general membership for a three-year

term. Each board member must be a principal of a member school and acts in a representative capacity to one of seven geographic divisions in the state as established by the IHSA constitution. Each member is elected by a vote of other public and private member school principals in that division. The remaining board members are elected from the member schools at-large. One board member must represent a private school, one must represent underrepresented genders, and one must represent racial minorities.

¶ 6 The IHSA's governing documents also set forth the legislative process used to create, amend, or repeal provisions of its constitution and bylaws. Member schools are divided into 21 election districts. A principal from each election district is elected to the legislative commission. Additionally, seven at-large commission members are elected by the general membership, one from each of the seven divisions, as well as seven athletic administrators elected by the general membership, one from each of the seven divisions. Each member school is given the opportunity to vote on legislative proposals, and all changes require the approval of a majority of member schools.

¶ 7 The board is also authorized by the IHSA constitution to employ an executive director and other administrative staff as necessary to conduct the business of the association. The executive director is authorized to "investigate and decide all matters concerning eligibility, protests, by-laws or rules," which then may be appealed to the board.

¶ 8 In June 2014, the Better Government Association (BGA), a not-for-profit corporation engaged as a watchdog in the public interest, submitted a FOIA request to the IHSA for all of its contracts for accounting, legal, sponsorship, and public relations/crisis communications services and all licensed vendor applications for the 2012-13 and 2013-14 fiscal years. The request specifically identified contracts with Home Team Marketing, Streigel Knobloch & Co., Nike, Gatorade, and Country Financial. The IHSA responded by indicating that it was a not-for-profit charitable organization not subject to the FOIA.

¶ 9 The BGA subsequently requested the same records from District 230, a school district whose high schools are among the public and private school members of the IHSA. The BGA claimed that it was entitled to the records under section 7(2) of the FOIA because the IHSA performs governmental functions on behalf of District 230. The District responded that it had no responsive documents and that the requested documents did not fall under section 7(2) because they did not pertain to the transaction of the District's public business and were not prepared by or for the District and were not used by, received by, in the possession of, or under the control of the District. District 230 further stated that the documents as described did not directly relate to any services performed on behalf of the District.

¶ 10 The BGA then sought to challenge the denials by filing a complaint against the IHSA and District 230 seeking a declaratory judgment in the circuit court that both parties violated the FOIA. The BGA attached to its complaint several exhibits, including the IHSA's governing documents and a copy of the IHSA's brief, filed in a separate proceeding in the appellate court in a case in which the IHSA had argued it was a "local public entity," as that term is defined under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act). 745 ILCS 10/1-206 (West 2014).

¶ 11 Thereafter, the IHSA moved for involuntary dismissal under section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2014)), arguing that it was not a public body subject to the FOIA. In support of its motion, the IHSA attached several exhibits,

including its governing documents; an affidavit from Martin Hickman, the IHSA's Executive Director; and a letter from the Illinois Attorney General's Office of the Public Access Counselor dated September 2010, indicating to a records requester that the IHSA was not a public body subject to the FOIA.

¶ 12    In Hickman's affidavit, he addressed the nature of the IHSA and the functions it performs under its governing documents. He stated that the IHSA is a recognized section 501(c)(3) charitable organization. See 26 U.S.C. § 501(c)(3) (2012). Although the IHSA constitution permits the IHSA to charge membership fees, dues, and entry fees, Hickman stated that it does not charge its member schools any membership fees, dues, or entry fees to its events. Rather, its revenue is generated based on the events that it organizes and the sponsorships that it receives.

¶ 13    In describing the nature of the board, Hickman explained that it is the individual principal that is elected to the board and not the member school. Thus, if an elected principal moves from one member school to a different member school, the principal would not lose his or her seat on the board and would not be replaced by the new principal of the original member school. Hickman stated that this rule applies even if the principal moves from a public to a private school or *vice versa*, as long as the new member school is located within the board member's elected division, if it is a "districted" seat, or continues to meet the requirements for a particular "at-large" seat. As an example, Hickman stated that a former elected board member continued to hold his board seat after changing jobs from Marmion High School to DePaul College Prep High School. The board seat did not pass to the new principal at Marmion. Additionally, according to Hickman, division 1, which was overwhelmingly composed of Chicago public schools, had two back-to-back elected board members from private schools.

¶ 14    With respect to voting on legislative proposals, Hickman stated that each school is given the opportunity to vote and that nothing in the governing documents prevents member schools within the same school district from casting opposite votes. Hickman further stated that the day-to-day operations of the IHSA are performed by the executive director and the administrative staff. They are not public employees, are not paid from public funds, and are not subject to state regulations regarding public employees or eligible for state or local government retirement programs or insurance benefits. Rather, Hickman indicated that they are paid by the IHSA and are provided benefits by the IHSA. Hickman also stated that the IHSA has its own federal employer identification number, withholds payroll taxes, and issues W-2 forms annually to its employees. He added that the IHSA owns the building that houses its offices.

¶ 15    In addition to the IHSA's motion, District 230 filed a motion to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)), arguing that the BGA's claim against it was legally insufficient and based upon unsupported legal conclusions. Specifically, the District argued that the requested documents are not "public records" of the District and are not directly related to any alleged governmental function the IHSA may perform on the District's behalf.

¶ 16    After briefing and argument on the respective motions, the circuit court granted both motions to dismiss. With respect to the IHSA's motion, the circuit court concluded that under the factors announced in *Rockford Newspapers, Inc. v. Northern Illinois Council on Alcoholism & Drug Dependence*, 64 Ill. App. 3d 94 (1978), the IHSA is not a public body

subject to the FOIA. With respect to the District's motion, the court found that section 7(2) of the FOIA did not apply in this case because the IHSA was not performing a governmental function on behalf of the District. Accordingly, the trial court dismissed the complaint with prejudice.

¶ 17    The appellate court affirmed. 2016 IL App (1st) 151356, ¶ 51. Applying the *Rockford* factors, the court found that the IHSA has an independent legal existence separate from its member schools or any other public body, a fact that the BGA conceded at oral argument. *Id.* ¶ 23. Additionally, the court found that although a public body could perform the functions of the IHSA, the IHSA does not perform a public, governmental function. The association is not controlled by a government entity and does not receive government funding. *Id.* ¶¶ 28, 31, 32. Accordingly, the court found that the IHSA is not a public body as defined by the FOIA. *Id.* ¶ 37. With respect to District 230's motion, the appellate court found that the requested records were not "public records" as defined by the FOIA and, therefore, not subject to disclosure under section 7(2). *Id.* ¶¶ 46, 48.

¶ 18    We allowed the BGA's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Jan. 1, 2015). Additionally, we allowed the Illinois Press Association and the Illinois Broadcasters Association to file an *amicus curiae* brief in support of the BGA and allowed the Metropolitan Pier & Exposition Authority and Navy Pier, Inc., to file an *amicus curiae* brief in support of the IHSA. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 19                                                    ANALYSIS
¶ 20                                      The IHSA's Motion to Dismiss
¶ 21    Section 2-619(a)(9) of the Code allows for dismissal of an action on the ground that "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2014). A motion to dismiss under section 2-619 admits well-pleaded facts but does not admit conclusions of law and conclusory factual allegations unsupported by allegations of specific facts. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. In considering the dismissal under section 2-619(a)(9), our task is ultimately to consider whether "the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). Our review of a section 2-619 dismissal is *de novo*. *Moon v. Rhode*, 2016 IL 119572, ¶ 15.

¶ 22    The BGA's appeal requires us to construe various provisions in the FOIA. When presented with an issue of statutory construction, our primary objective is to ascertain and give effect to the intent of the legislature. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 25. The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *Id.* A reasonable construction must be given to each word, clause, and sentence of a statute, and no term should be rendered superfluous. *In re M.M.*, 2016 IL 119932, ¶ 16. Additionally, we may consider "the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *Id.*

¶ 23    We first consider the issue of whether the IHSA is a public body as defined by the FOIA. The principal mandate of the FOIA is found in section 3(a), which provides that "[e]ach public

- 5 -

body shall make available to any person for inspection or copying all public records." 5 ILCS 140/3(a) (West 2014). As defined in the FOIA, the term "[p]ublic body" means:

> "all legislative, executive, administrative, or advisory bodies of the State, state universities and colleges, counties, townships, cities, villages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees, or commissions of this State, any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees thereof." 5 ILCS 140/2(a) (West 2014).

The IHSA does not fall within one of the specifically enumerated bodies of the State or local government. Therefore, if it is subject to the FOIA, it must fall within the category of "any subsidiary bodies of any of the foregoing" governmental units. *Id.* Since the term "subsidiary bod[y]" is not further defined by the statute, we first look to its generally understood meaning. See *Bayer v. Panduit Corp.*, 2016 IL 119553, ¶ 25. A "subsidiary" is an entity "belonging to or controlled by another." Webster's Third New International Dictionary 2279 (1993). Black's Law Dictionary defines "subsidiary" as "subordinate; under another's control." Black's Law Dictionary 1656 (10th ed. 2014). Additionally, the statute expressly provides examples of subsidiary bodies, namely "committees and subcommittees." These would both fall within that commonly understood meaning in the sense that they are subordinate to and controlled by one of the "foregoing" enumerated public bodies.

¶ 24 Thus, as our appellate court has noted, the definition and the specific examples provided indicate that "inclusion within that definition depends primarily upon organizational structure." *Board of Regents of the Regency University System v. Reynard*, 292 Ill. App. 3d 968, 977 (1997). Additionally, the statutory phrase "including but not limited to" means that when the statute was originally enacted in 1984, the General Assembly recognized that there could be other organizational arrangements that are not specifically listed. Thus, the statute requires that each arrangement must be examined on a case-by-case basis.

¶ 25 Although this court has not yet considered whether a private entity could be considered a "subsidiary bod[y]" under the FOIA, the appellate court has considered that issue as applied to both the Open Meetings Act (5 ILCS 120/1.02 (West 2014)) and the FOIA (5 ILCS 140/2 (West 2014)). *Hopf v. Topcorp, Inc.*, 256 Ill. App. 3d 887 (1993) (FOIA and Open Meetings Act); *Rockford Newspapers, Inc.*, 64 Ill. App. 3d 94 (1978) (Open Meetings Act). The definition of a public body is substantially identical in both of those statutes. We find no reason to distinguish between the determination of a public body for purposes of the Open Meetings Act and the FOIA. See *Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 468-69 (1989); *Reynard*, 292 Ill. App. 3d at 975-76; *Hopf v. Topcorp, Inc.*, 170 Ill. App. 3d 85, 91 (1988); *Hopf v. Topcorp, Inc.*, 256 Ill. App. 3d 887, 893 (1993).[1]

¶ 26 In *Rockford Newspapers* and *Hopf*, the courts considered the following factors in determining whether a private entity could be a "subsidiary bod[y]": (1) the extent to which the entity has a legal existence independent of government resolution, (2) the degree of

---

[1]Notably, prior to 2010, the language of both the Open Meetings Act and the FOIA included in the definition of a public body "any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees *which are supported in whole or in part by tax revenue, or which expend tax revenue.*" 5 ILCS 120/1.02 (West 2008); 5 ILCS 140/2(a) (West 2008). Effective January 1, 2010, the italicized language was removed from the FOIA by Public Act 96-542 (eff. Jan. 1, 2010). The parties do not raise this distinction, and we find that it does not alter our analysis in this case.

- 6 -

government control exerted over the entity, (3) the extent to which the entity is publicly funded, and (4) the nature of the functions performed by the entity. *Rockford Newspapers*, 64 Ill. App. 3d at 96-97; *Hopf*, 170 Ill. App. 3d at 91-92. We agree with the appellate court that these factors are relevant and instructive in determining whether a private entity is a subsidiary body under the FOIA. We emphasize that no single factor is determinative or conclusive, but as the definition indicates, the key distinguishing factors are government creation and control.

¶ 27    The BGA does not dispute that these factors are relevant but urges us to consider two additional factors in our determination: (1) the extent to which a private entity has been found to perform state action under federal civil rights laws and (2) whether a private entity is entitled to governmental tort immunity.

¶ 28    With respect to the first factor, section 1983 of Title 42 of the United States Code authorizes private parties to enforce their rights under the federal constitution against defendants who act under color of state law. 42 U.S.C. § 1983 (2012). Generally, for the conduct of private parties to be considered state action, there must be a sufficiently close nexus between the state and the private conduct so that the action may be "fairly attributable to the state." *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001).

¶ 29    The Supreme Court has articulated a number of tests to determine whether challenged conduct may be attributable to the state so as to render a private actor liable under section 1983. The Court has recognized that what is fairly attributable to a state is a "normative judgment" not subject to rigid criteria and is based on a "host of facts that can bear on the fairness of such an attribution." *Id.* at 295-96. "From the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." *Id.*

¶ 30    Notably, in the federal context, entities found to be state actors for one purpose are not necessarily public bodies under the federal Freedom of Information Act. See, *e.g.*, *Irwin Memorial Blood Bank of the San Francisco Medical Society v. American National Red Cross*, 640 F.2d 1051, 1052 (9th Cir. 1981) ("Because Congress has expressly defined those agencies to which the [federal FOIA] applies, the relevance of characterizations of an entity in different contexts is substantially diminished."); see also *Dong v. Smithsonian Institution*, 125 F.3d 877, 878, 882-83 (D.C. Cir. 1997) (even though the Smithsonian Institution was an agency for purposes of some federal statutes, it did not meet the definition of agency under the Federal Privacy Act, which derived its definition from the federal FOIA).

¶ 31    Thus, although there may be some overlapping considerations between a "subsidiary bod[y]" and a "state actor," we see no benefit to grafting another test onto our analysis here. The fact that in some instances a private entity's conduct may subject it to the constitutional limits placed on state action based on the federal courts' "state actor" analysis is not necessarily helpful in determining the scope of the statutory definition of "public body" as defined by our General Assembly. The only issue before this court is whether the IHSA is a subsidiary to one of the enumerated public bodies of this State as defined by the FOIA. Therefore, we reject the BGA's request that we expand our construction of the definition of a subsidiary body to include an entity found to be a state actor under federal civil rights laws.

¶ 32     We next address the BGA's contention that an entity that qualifies as a "local public entity" under the Tort Immunity Act should also be considered a public body under the FOIA. The purpose of the Tort Immunity Act is to protect local public entities and public employees from liability arising from the operation of government. *Harris v. Thompson*, 2012 IL 112525, ¶ 17. A local public entity is defined under the statute to include a "not-for-profit corporation organized for the purpose of conducting public business." 745 ILCS 10/1-206 (West 2014). In *O'Toole v. Chicago Zoological Society*, 2015 IL 118254, we emphasized that the key inquiry in cases like this is whether the private entity seeking tort immunity remains subject to "operational control by a unit of local government." *Id.* ¶ 23.

¶ 33     To the extent that evidence of operational control is a key inquiry under both the Tort Immunity Act and the FOIA, we find that the fact that an entity is a "local public entity" subject to the Tort Immunity Act may be relevant as it relates to the degree of government control. Here, the IHSA is not a "local public entity" as defined by the Tort Immunity Act (*Hood v. Illinois High School Ass'n*, 359 Ill. App. 3d 1065 (2005)), but that fact is not conclusive of whether it is a public body subject to the FOIA.

¶ 34     Accordingly, consistent with our construction of section 2 of the FOIA, whether a private entity could be deemed a subsidiary body under the FOIA requires a case-by-case consideration of the four factors set forth above. No single factor is dispositive, but the key inquiry involves an examination of the entity's creation and the extent of governmental control.

¶ 35     Having considered the general legal principles that apply to this determination, we now address the relevant factors as they relate specifically to the IHSA. Preliminarily, we note that the BGA's allegations in its complaint do not specifically identify the enumerated public body to which the IHSA is allegedly a subsidiary. Throughout these proceedings, the BGA has made various assertions including that the IHSA is a subsidiary of the collective member public schools, which is not in and of itself a public body or, alternatively, a subsidiary of the school districts to which its member public schools belong. As discussed below, the IHSA's governing documents do not reflect any such organizational structure, and the IHSA does not otherwise satisfy the definition of a subsidiary body.

¶ 36                                    1. *Independent Legal Identity*

¶ 37     With respect to the first factor, independent legal identity, it is undisputed that the IHSA was not created by a school district or any other public body or by any other statute or government resolution. It has had a separate legal existence, independent from any public body, for more than the past 100 years. As a voluntary unincorporated association, it has independent standing to sue and be sued. 735 ILCS 5/2-209.1 (West 2014). Its authority is derived from its board of directors, which is created pursuant to its own constitution. No statute defines the limits of its authority.

¶ 38     Under its governing documents, the IHSA board is not formally created by any public body. Notably, unlike other high school athletic associations in other states, the IHSA has never been "housed" within a public body, and its rules and regulations have never been part of the School Code. 105 ILCS 5/1-1 *et seq.* (West 2014). Nor has the IHSA ever been designated as the official athletic association of the State. *Cf. Breighner v. Michigan High School Athletic Ass'n*, 683 N.W.2d 639, 650-52 (Mich. 2004) (Weaver, J., dissenting, joined by Kelly, J.); *City*

*Press Communications, LLC v. Tennessee Secondary School Athletic Ass'n*, 447 S.W.3d 230, 238 (Tenn. Ct. App. 2014). Thus, the first factor weighs against finding the IHSA is a public body under the FOIA.

¶ 39                                    2. *Degree of Government Control*

¶ 40        With respect to the second factor, the degree of government control, the BGA asserts that the IHSA is subject to government control because public schools comprise a majority of its membership. Despite the fact that its members are primarily public schools, no public body has control over how the governing board is established or comprised. There is nothing in the governing documents to suggest that the board is controlled by school districts. Membership by individual schools is not compulsory. Not all public high schools in Illinois are members of the IHSA. They are free to join other athletic organizations in lieu of, or in addition to, the IHSA.

¶ 41        Although public schools account for the majority of the membership, this is not a requirement of the IHSA's constitution. There is no requirement that principals from the same school district vote in alignment with respect to proposed changes to the constitution and bylaws. Each board member acts on behalf of all of the schools in his division, including private schools. The board is not accountable to any particular school district or particular public school. Nothing in the IHSA's governing documents show that the actions of the board must receive approval from any public body.

¶ 42        Furthermore, an individual principal is elected to the board and can change schools during his tenure, even from public to private, as long as the principal continues to meet the divisional requirements of that particular board seat as created by the IHSA. Board members do not receive compensation to be a member of the board.

¶ 43        In addition, the executive director and assistants and other administrative staff are employed by the IHSA to manage the day-to-day operations of the organization. The executive director has the "authority and responsibility to investigate and decide all matters concerning eligibility, protests, by-laws or rules," which may be then appealed to the board. The executive director and staff are not government employees, are not paid from government funds, and are not subject to state regulations regarding public employees. They are not eligible for state or local governmental retirement programs or insurance benefits.

¶ 44        The BGA has identified certain statutory duties imposed on the IHSA regarding concussion protocols, insurance coverage, a legislative liaison, and consultations it must have with the Illinois State Board of Education in the Board of Education's development of rules regarding equal access programming.[2] These statutes do not suggest any kind of pervasive day-to-day control over the functioning of the IHSA with respect to its bylaws and rules, the enforcement of those rules, or its promotion and sponsorship of its tournaments. Merely because the legislature imposes certain duties on an entity for the public good does not mean that the entity is substantially controlled by government. See *Rockford*, 64 Ill. App. 3d at 95 (finding that an entity was not a public body despite being "required to comply with numerous government regulations").

---

[2]See 105 ILCS 5/10-20.54, 22-15(c), 22-24, 27-1, 34-18 (West 2014).

¶ 45    We further reject the BGA's assertion that its allegations raised a genuine issue of material fact. The BGA alleged in its complaint that the IHSA "argued in [the *Hood* case] that it enjoys governmental legal immunities based on factual representations that are dispositive to the question here." The BGA asserts that the IHSA's arguments in the prior litigation amount to evidentiary admissions that contradict the Hickman affidavit, thereby creating an issue of fact.

¶ 46    In *Hood v. Illinois High School Ass'n*, 359 Ill. App. 3d 1065 (2005), the IHSA made several arguments in an effort to establish the operational control necessary to support its tort immunity. In support, the IHSA asserted that local governmental entities "own" the association, that local governmental control is pervasive, that the business of the association is public business, that the IHSA is an agency of the collective schools of Illinois, and that the employees of the local entities control the IHSA's governing body. The court in the *Hood* case ultimately found that the IHSA was not a "local public entity" under the Tort Immunity Act. *Id.* at 1069-70.

¶ 47    Though the IHSA made those arguments in the context of a tort immunity case, its arguments are not evidence that would create an issue of fact. Here, the governing documents speak for themselves, and the Hickman affidavit does not conflict with any well-pleaded fact. Furthermore, even if we were to construe these statements as admissions, "[a] party is not bound by admissions regarding conclusions of law because the courts determine the legal effect of the facts adduced." *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 475 (2010). Thus, we find the second factor weighs against finding the IHSA is a public body under the FOIA.

¶ 48                                      3. *Public Funding*

¶ 49    With respect to the third factor, public funding, the IHSA does not receive any direct governmental funding. Although it has the capacity to, it does not charge any dues to its member schools and does not charge schools any entry fees to participate in its events. The BGA argues that although the IHSA receives no direct governmental funding, it earns revenue indirectly from the efforts of public school students at events held at public facilities.

¶ 50    The IHSA revenue is generated primarily from the postseason interscholastic events that it organizes and the sponsorships it obtains for those events. The IHSA earns money from the sale of tickets to the general public, who have voluntarily paid a fee to attend the event. The IHSA enters into contracts with host schools and pays a fee for use of the schools' facilities.

¶ 51    The BGA additionally asserts that the IHSA is government funded because it receives profits that otherwise could have been made by the member public schools. This argument was rejected in *Breighner*, 683 N.W.2d 639. There, the Michigan Supreme Court was asked to consider whether the Michigan High School Athletic Association was a public body under its public records statute. The definition of a public body included an entity which is primarily funded by or through state or local authority. *Id.* at 644. The court rejected such a broad, far-reaching sense of whether an entity is funded by government in this context. It found that to hold otherwise would place any contractor that obtains a majority of its income from sales or services rendered to government bodies within the statute's purview merely because it receives money "by virtue of" its relationship with a governmental body. (Emphasis omitted.) *Id.* at 645 n.2.

- 10 -

¶ 52    As an example, it cited the not-for-profit College Board, which administers the SAT to public school students in the classrooms of participating public schools each year. Its revenue is derived from public school students who pay an examination fee directly to the College Board. Merely because it derives income from the fact that "the public schools have facilitated an opportunity for the Board to administer this test in the schools" does not make it a public body subject to disclosure requirements. *Id.*

¶ 53    We find this reasoning to be sound. Similarly, the IHSA is not funded by participating member schools but, rather, generates its revenue from its organizational efforts. Additionally, the IHSA provides a function that no member public school could provide on its own and, for the last 100 years, no other public body in the State has sought to provide. The fact that the public schools could provide this service at their own expense does not transform the revenue generated by the IHSA into public funding. Thus, we find that the third factor weighs against a finding that the IHSA is a public body under the FOIA.

¶ 54                          4. *Nature of the Functions Performed*

¶ 55    In view of our findings that the IHSA is not created, controlled, or funded by government, we need not decide whether it performs a governmental function. Even if the nature of the functions performed by the IHSA were governmental, this factor alone cannot transform a private entity into a public body for purposes of the FOIA. To hold otherwise would mean that any private entity that merely provides education services to public schools would risk being transformed into a public body. The General Assembly could not have intended such a result. Accordingly, for all of the foregoing reasons, based on the pleadings and supporting documents, we find that the IHSA is not a public body as that term is defined in the FOIA. Therefore, the circuit court properly granted the IHSA's motion to dismiss.

¶ 56                          District 230's Motion to Dismiss

¶ 57    Next, we consider the BGA's claim against District 230, which was dismissed pursuant to section 2-615 of the Code. A section 2-615 motion to dismiss tests the legal sufficiency of the complaint. *Hadley v. Doe*, 2015 IL 118000, ¶ 29. When ruling on the motion, we must accept as true all well-pleaded facts and any reasonable inferences that may arise from them, but a court cannot accept as true mere conclusions unsupported by specific facts. *Patrick Engineering, Inc.*, 2012 IL 113148, ¶ 31. Our review of the granting of a section 2-615 motion to dismiss is *de novo*. *Id.*

¶ 58    The BGA contends that it sufficiently stated a cause of action against District 230 to impose upon it an obligation to disclose the requested records of the IHSA. The basis for the BGA's claim is that the IHSA performs a governmental function on behalf of the District and that the requested records directly relate to that function, thereby triggering the required disclosure under section 7(2) of the FOIA.

¶ 59    Again, we are called upon to construe the FOIA to resolve the BGA's contentions. As stated, under the general framework of the FOIA, public bodies have to disclose their "public records" upon request, unless they can establish the records are exempt. 5 ILCS 140/3(a) (West 2014). There is no question that District 230 is a public body subject to the FOIA's disclosure requirements. 5 ILCS 140/2(a) (West 2014) (" 'Public body' means all *** school districts ***."). The term "[p]ublic records" is defined in pertinent part as:

- 11 -

"[A]ll records *** pertaining to the transaction of public business, *** having been prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body." 5 ILCS 140/2(c) (West 2014).

Other than its conclusory allegation that the requested records were nonexempt public records of District 230, the BGA did not specifically allege that the requested records fall within the definition of a public record as defined in section 2(c). Presumably, the BGA recognized that the requested records were not prepared by or for, not used by, received by, in the possession of, or under the control of the District.

¶ 60 Rather, the BGA alleged that the requested records were public records of District 230 as provided under section 7(2) of the FOIA. Section 7(2) provides as follows:

"A public record that is not in the possession of a public body but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the public body, and that directly relates to the governmental function and is not otherwise exempt under this Act, shall be considered a public record of the public body, for purposes of this Act." 5 ILCS 140/7(2) (West 2014).

¶ 61 Section 7(2) was added to the FOIA in 2010 by Public Act 96-542 (eff. Jan. 1, 2010) to extend the definition of what is considered a public record of a public body, where the records are not in the public body's possession. If a public body contracts with a party to perform a governmental function on behalf of the public body, records that are in that party's possession that directly relate to that governmental function and are not otherwise exempt are public records of the public body.

¶ 62 The BGA asserts that in adding section 7(2), it was the General Assembly's intent to respond to the growing concern related to the privatization of government responsibilities and its impact on the right of public information access and transparency. As the BGA points out, when governmental functions are privatized, there is a risk of decreased accountability and transparency. We agree that such an interpretation is consistent with the purpose of the FOIA, which is expressly based on a policy of full, complete disclosure regarding the affairs of government to promote accountability in government and an informed citizenry. 5 ILCS 140/1 (West 2014); *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378-79 (1989). To that end, we agree that section 7(2) ensures that governmental entities must not be permitted to avoid their disclosure obligations by contractually delegating their responsibility to a private entity.

¶ 63 Thus, the question before us is whether the IHSA has contracted with District 230 to perform a governmental function on its behalf and, if so, whether the requested records are directly related to that governmental function. At the outset, we note that the BGA never specifically alleged in its complaint that the IHSA contracted with District 230 or explained the nature of such a contract. With respect to performing a governmental function on the District's behalf, "governmental function" is defined as "a government agency's conduct that is expressly or impliedly mandated or authorized by constitution, statute, or other law and that is carried out for the benefit of the general public." Black's Law Dictionary 812 (10th ed. 2014).

¶ 64 The comprehensive responsibilities of District 230 are generally set forth in the School Code. 105 ILCS 5/1-1 *et seq.* (West 2014). The responsibility to govern and coordinate interscholastic athletic competitions for public and private school students is not one of its functions. Indeed, there is no constitutional, statutory, or other law that mandates or authorizes

- 12 -

District 230 to perform those functions. The School Code authorizes school boards to form or join associations. 105 ILCS 5/23-2 (West 2014). That authorization does not mean that District 230 is authorized to perform the functions of the IHSA. Thus, the IHSA is not acting on behalf of District 230 to perform the District's responsibilities. Alternatively, District 230 has not delegated any of its governmental functions to the IHSA.

¶ 65 Notably, the IHSA is distinct from other state high school athletic associations where the State has ceded its government authority to the association to perform these functions. For example, as noted in *City Press Communications*, 447 S.W.3d 230, the historical relationship between the Tennessee State Board of Education and the association made it clear that "the Board of Education viewed athletic activities in public schools to be one of its functions" and that the board officially designated the association as the organization to regulate interscholastic sports in Tennessee. *Id.* at 238. At one time, the Tennessee State Board of Education also approved the rules and regulations and reserved the right to review the appropriateness of future changes. *Id.*; see also *Breighner*, 683 N.W.2d at 647 (interscholastic athletic association was historically legislatively designated as the official organization for the regulation of interscholastic sports and housed within the Michigan Department of Education). In contrast, the IHSA has been responsible for those functions for the past 100 years. Accordingly, where the IHSA has not contracted to perform a governmental function on behalf of District 230, the requested records are not public records of the District under section 7(2) of the FOIA. Therefore, the circuit court properly granted District 230's motion to dismiss.

¶ 66                                     CONCLUSION

¶ 67 For the foregoing reasons, we hold that the IHSA is not a public body as defined by the FOIA and that the requested records are not the public records of District 230. Accordingly, we affirm the judgment of the appellate court, which affirmed the circuit court's dismissal of the BGA's complaint.

¶ 68 Affirmed.