2022 IL App (2d) 210704
No. 2-21-0704
Opinion filed December 1, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| RIVER BREEZE, LLC, In Its Individual Capacity and Derivatively on Behalf of Aurora Downtown, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 20-CH-376 |
| | ) | |
| KIM GRANHOLM, GINA SALAMONE, and AURORA DOWNTOWN, | ) ) | Honorable |
| | ) | Kevin T. Busch, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Brennan and Justice Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1 The plaintiff, River Breeze, LLC, brought suit both on its own behalf and on behalf of Aurora Downtown, a not-for-profit organization of which it is a member, against the defendants Kim Granholm and Gina Salamone, who are directors of Aurora Downtown, and against Aurora Downtown itself. Counts I and II of the amended complaint sought the removal of Granholm and Salamone from the board pursuant to the General Not for Profit Corporation Act of 1986 (Act) (805 ILCS 105/108.35 (West 2016)). Count III alleged that Aurora Downtown violated the Freedom of Information Act (FOIA) (5 ILCS 140/11 (West 2016)). The trial court dismissed the complaint, and the plaintiff appeals that dismissal. We vacate the trial court's dismissal and remand for further proceedings.

¶ 2                                  I. BACKGROUND

¶ 3     The following facts are drawn largely from the amended complaint's allegations, which we accept as true to consider whether the trial court correctly dismissed the complaint. See *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86 (1996).

¶ 4     The City of Aurora created Special Service Area Number One (SSA No. 1), permitting it to levy taxes on property owners within that area to provide for the economic benefit of the area, a business district in Aurora. Aurora Downtown is a not-for-profit corporation organized under the Act. The complaint alleges that "Aurora Downtown was created pursuant to the SSA No. 1 and, through its elected Board of Directors, *** is charged with utilizing the SSA No. 1 tax revenue in order to advise the City of Aurora" on combatting community deterioration, improving and redeveloping the SSA, and aiding businesses within the SSA. The complaint further alleges that "SSA No. 1 specifically identifies Aurora Downtown as an agency of the City of Aurora," that Aurora Downtown has openly acknowledged that it serves as an advisory body to the city, and that Aurora Downtown derives all of its powers from the city and must seek the city's approval for its projects and actions. Aurora Downtown has an appointed FOIA officer to respond to FOIA requests and has previously responded to such requests. The plaintiff is a limited liability company that owns three parcels within the SSA. As a property owner of such parcels, the plaintiff is required to pay special taxes and is a member of Aurora Downtown.

¶ 5     During the relevant time, Granholm served as a director on the board of Aurora Downtown and as the board chair. Salamone was another director. The organization's by-laws required it to hold an annual meeting and choose directors in December. Although some directors were required to be drawn from designated organizations (*e.g.*, the public library, the convention and visitors' bureau), members could nominate and vote upon the other directors. The board chair was charged with preparing ballots for the election and making them available to members before the annual

meeting. Members were required to return their completed ballots to the chair five days before the annual meeting. Under section 5.8 of the by-laws, the chair could appoint one or more inspectors to

> "ascertain and report the number of votes represented at the meeting, based on their determination of the validity and effect of proxies; count all votes and report the results; and do such other acts as are proper to conduct the election and voting with impartiality and fairness to all the Members."

The report of the votes and election results was required to be in writing and signed either by the inspector or, if there was more than one, by a majority of them.

¶ 6     The plaintiff alleged that, in preparation for the 2017 annual meeting, Granholm prepared the ballots and distributed them with the instruction that they must be returned by 5 p.m. on December 1, 2017. Granholm then began counting the ballots in the presence of Salamone and the manager of Aurora Downtown. Granholm had not formally appointed the latter two as inspectors. The plaintiff alleged that all three "shared a common hostility towards certain Members" and "intended to 'block' those Members' nominations [*sic*] for Director." Thus, the plaintiff alleged, the presence of these hostile noninspectors was improper and cast doubt on the integrity of the election. Granholm later announced the outcome of the election. No certification of the votes was made.

¶ 7     On January 31, 2018, Daniel Hites, the sole managing member of the plaintiff, submitted a FOIA request to Aurora Downtown, seeking—among other things—copies of all nominating petitions, the ballots (redacted as to all information except the actual vote), the voter signature and parcel number section of each ballot (redacted as to the actual vote), and all e-mails, letters, documents, and minutes relating to the 2017 election. In response, Granholm stated that 41 ballots were counted and 2 rejected, and 35 ballots were unavailable for inspection. Granholm also stated

that the ballots were counted by unnamed "appointed inspectors," although she did not produce any written report of such inspectors. Granholm included with her response an altered section of the by-laws that "redacted key portions." The plaintiff alleged that she did so with the intent to deceive and to induce the plaintiff to rely on her false representations.

¶ 8 The plaintiff submitted additional FOIA requests, and Granholm responded to the second one. No response was made to the third request. Salamone, signing herself as Aurora Downtown's FOIA officer, responded to the fourth and fifth requests.

¶ 9 The plaintiff alleged that the responses to the FOIA requests "revealed additional irregularities in the 2017 election process." The complaint alleged that, on information and belief, Granholm accepted and counted invalid ballots, accepted and counted ballots after the December 1, 2017, deadline, allowed certain members to vote twice, and (either herself or with others) altered or forged nine ballots. The complaint also alleged that Salamone participated in some or all of Granholm's misconduct. This misconduct constituted a breach of Granholm's and Salamone's fiduciary duty as directors, and was "detrimental to Aurora Downtown because it *** damaged the fairness, impartiality, and integrity of Aurora Downtown's elections" as well as public confidence in the city and its agencies. Further, on information and belief, this misconduct had jeopardized Aurora Downtown's financing and contract with the city.

¶ 10 Citing section 108.35(d) of the Act, count I sought the removal of Granholm from the board, and count II sought Salamone's removal. Section 108.35(d) provides that a circuit court may remove directors of not-for-profit corporations

"in a proceeding commenced either by the corporation or by members entitled to vote holding at least 10 percent of the outstanding votes of any class if the courts finds (1) the director is engaged in fraudulent or dishonest conduct or has grossly abused his or her

position to the detriment of the corporation, and (2) removal is in the best interest of the corporation." 805 ILCS 105/108.35(d) (West 2016). Section 108.35(d) further provides that, "[i]f such a proceeding is commenced by a member entitled to vote, such member shall make the corporation a party defendant." *Id.*

¶ 11   Count III asserted that Aurora Downtown's FOIA responses were incomplete and, in some instances, falsified, which violated FOIA and demonstrated bad faith. The plaintiff sought the assessment of a statutory civil penalty for this bad faith and to recover its attorney fees and costs.

¶ 12   The defendants filed a combined motion to dismiss the amended complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)). The motion argued that, as to counts I and II, the complaint did not state a claim because the allegations of fraudulent conduct by Granholm and Salamone were insufficiently pled and the complaint did not adequately plead any actual detriment to Aurora Downtown arising from their conduct. As to count III, the motion contended that Aurora Downtown could not be considered a "public body" required to respond to FOIA requests because it was an "independent" body organized as a not-for-profit corporation under the Act. As relevant here, the motion also argued that the plaintiff was required to identify the documents it believed the defendants were wrongfully withholding.

¶ 13   The plaintiff responded that, given Granholm's and Salamone's fiduciary duties toward Aurora Downtown and its members, it had adequately pled grounds for their removal under the Act. It also argued that Aurora Downtown met the legal test to determine whether an organization is considered a subsidiary "public body" under the Act and disputed that FOIA required the complaint to identify the documents that the plaintiff believed still had not been produced. In their reply, the defendants repeated their earlier arguments and added a new argument—that counts I and II were moot because they alleged wrongdoing only in connection with the 2017 election, but

there were three annual board elections since 2017 where Granholm and Salamone were reelected

.

¶ 14    The trial court issued its ruling on November 2, 2021, after hearing oral argument. No transcript of the hearing is included in the record on appeal, but the order entered that day contains some of the trial court's reasoning. Rather than ruling on the arguments raised and briefed by the parties, the trial court dismissed counts I and II on the basis that the plaintiff lacked standing to bring those counts because section 108.35 did not permit the plaintiff to bring a derivative claim on behalf of the members of Aurora Downtown seeking to remove Granholm and Salamone and the plaintiff had failed to plead that it held at least 10% of the outstanding votes of any class, "as required by" section 108.35. Although the trial court purported to dismiss counts I and II without prejudice, the order made clear that the trial court would again dismiss those counts unless the plaintiff could plead that it held a voting interest equal to 10% of the outstanding votes—a fact that the plaintiff admitted it could not plead. As to count III, the trial court dismissed it with prejudice, finding that Aurora Downtown was not a "subsidiary body" of the City of Aurora and thus was not subject to FOIA. This appeal followed.

¶ 15                             II. ANALYSIS

¶ 16    On appeal, the plaintiff argues that the trial court erred in dismissing counts I and II because the Act does not bar bringing a derivative suit to remove a director and those counts were sufficiently pled. It also contends that Aurora Downtown is, in fact, a "subsidiary body" subject to FOIA. Before addressing these arguments, we pause to consider our own jurisdiction to hear this appeal.

¶ 17                A. Jurisdiction to Review the Dismissal of Counts I and II

¶ 18    Although none of the parties questions our jurisdiction over the issues raised in this appeal, a reviewing court has a duty to consider *sua sponte* whether it has jurisdiction and to dismiss an

appeal (or a portion of an appeal) if it lacks jurisdiction. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 251-52 (2010). Here, the trial court's order purported to dismiss counts I and II "without prejudice," allowing the plaintiff 28 days to replead those counts. A dismissal without prejudice generally is not a reviewable final order but rather is an interim order that may become final if the plaintiff fails to file an amended pleading or if the issue is finally resolved in some other manner. See *In re V.S.*, 2022 IL App (2d) 210667, ¶ 16. As the plaintiff elected to stand on its complaint and appeal rather than replead counts I and II, the dismissal became final and we have jurisdiction to review it.[1] *Id.*

¶ 19 Although the defendants do not dispute our jurisdiction to hear the appeal from the dismissal of counts I and II, they contend that, because the plaintiff lacked standing under the Act to seek their removal from the board, the trial court itself lacked the power to hear those claims at all. This argument borders on the frivolous, as it is based on the concept of limited statutory jurisdiction, which has been defunct for 20 years. As we noted in *Nationstar Mortgage, LLC v. Canale*, 2014 IL App (2d) 130676, ¶ 12, the supreme court rejected this concept in *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325 (2002). The supreme court explained that, although this view of limited statutory jurisdiction was correct under the old

---

[1]We note that jurisdiction would also exist because the trial court's dismissal of counts I and II is more properly categorized as a dismissal based on an affirmative defense under section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)), not a dismissal for failure to state a claim under section 2-615 of the Code (*id.* § 2-615). The trial court dismissed counts I and II on the basis that the plaintiff lacked standing to bring them. Lack of standing to bring an action is an affirmative defense (*Lebron*, 237 Ill. 2d at 252), and thus a plaintiff generally need not plead that it has standing.

constitution of 1870, "under our present constitution, '[w]ith the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution.' " *Canale*, 2014 IL App (2d) 130676, ¶ 12 (quoting *Belleville Toyota*, 199 Ill. 2d at 334). Because a circuit court's jurisdiction now extends to all "justiciable matters" (Ill. Const. 1970, art. VI, § 9), a complaint need not demonstrate perfect compliance with all statutory prerequisites; it need only present a justiciable matter. *Canale*, 2014 IL App (2d) 130676, ¶¶ 12-15. This justiciability requirement is met so long as "the alleged claim falls within the general class of cases that the court has the inherent power to hear and determine." *In re Luis R.*, 239 Ill. 2d 295, 301 (2010).

¶ 20    Here, there is no dispute that the complaint sought the removal of directors under the Act or that the trial court had the power to consider and resolve such claims. (The defendants argue only that the plaintiff was not a proper party to bring such claims.) Thus, the complaint raised a justiciable matter, and the trial court had jurisdiction over counts I and II. See *Canale*, 2014 IL App (2d) 130676, ¶ 18 (foreclosure complaint raised a justiciable matter despite failing to allege the plaintiff's interest in the mortgage as required by the foreclosure statute). We therefore reject the defendants' argument that the plaintiff's purported lack of standing under the Act affected the trial court's jurisdiction and turn to the substance of that standing issue.

¶ 21                    B. Dismissal of Counts I and II—Standing Under the Act

¶ 22    When we review the dismissal of claims, we are guided by certain standards. Although the defendants' motion to dismiss raised arguments under both section 2-615 (attacking the sufficiency of the complaint) and section 2-619 of the Code (raising certain affirmative defenses), the trial court based its dismissal solely on the latter arguments, finding that affirmative defenses barred the plaintiff's claims. Further, on appeal, the defendants do not argue that the allegations of the complaint were insufficient to state a claim. Thus, we apply the standards for evaluating a dismissal

under section 2-619. A section 2-619 motion to dismiss assumes the allegations of the complaint are true but asserts an affirmative defense or other matter that would defeat the plaintiff's claim as a matter of law. 735 ILCS 5/2-619 (West 2020); *Nielsen-Massey Vanillas, Inc., v. City of Waukegan*, 276 Ill. App. 3d 146, 151 (1995). Such a motion admits well-pleaded facts but does not admit conclusions of law and conclusory factual allegations unsupported by allegations of specific facts alleged in the complaint. *Better Government Ass'n v. Illinois High School Ass'n* [*IHSA*], 2017 IL 121124, ¶ 21. We review the dismissal of a complaint under section 2-619 *de novo*. *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002).

¶ 23    The issue of whether the plaintiff had standing under the Act to seek the removal of Granholm and Salamone as directors of Aurora Downtown requires us to interpret that statute. In construing a statute, our task is to "ascertain and give effect to the legislature's intent." *Lieb v. Judges' Retirement System*, 314 Ill. App. 3d 87, 92 (2000). The best indicator of the legislature's intent is the plain language of the statute. *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003). "When the statute's language is clear, it will be given effect without resort to other aids of statutory construction." *Id.* "One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole," and thus "words and phrases must be interpreted in light of other relevant provisions of the statute." *J.S.A. v. M.H.*, 224 Ill. 2d 182, 197 (2007). "A court may also consider the reason for the statute, the problems it seeks to remedy, the purposes to be achieved, and the consequences of interpreting the statute one way or another." *Sperl v. Henry*, 2018 IL 123132, ¶ 23.

¶ 24    Under section 108.35(d) of the Act, an action to remove the director of a not-for-profit corporation may be brought "either by the corporation or by members entitled to vote holding at least 10 percent of the outstanding votes of any class." 805 ILCS 105/108.35(d) (West 2016). The plaintiff concedes that it does not hold at least 10% of the members' votes, so it may only proceed

if it is suing "by the corporation." The plaintiff posits that, by bringing a derivative suit on behalf of all the members of Aurora Downtown, it has asserted a claim "by" the corporation. This position is supported by the common understanding of the term "by," as one of the definitions of that term is "on behalf of." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/by (last visited Nov. 18, 2022) [https://perma.cc/QA5M-VVUJ].

¶ 25    The defendants argue that a derivative action is not an action "by the corporation." However, the only authority they cite to support that argument is *Goldberg v. Astor Plaza Condominium Ass'n*, 2012 IL App (1st) 110620, ¶ 53, which does not say anything of the kind. Rather, *Goldberg* notes that a derivative suit is " 'one of the remedies which equity designed for those situations where the management through fraud, neglect of duty or other cause declines to take the proper and necessary steps to assert the rights which the corporation has' " (*id.* ¶ 52 (quoting *Meyer v. Fleming*, 327 U.S. 161, 167 (1946)), and that such a suit is "based upon the corporate right that was allegedly violated" (*id.* ¶ 53). *Goldberg* supports the conclusion that, as derivative suits are brought on behalf of the corporation to vindicate its rights, they are effectively suits by the corporation.

¶ 26    The plaintiff's position is also buttressed by the fact that a different provision of the Act expressly permits the voting members of not-for-profit corporations to bring derivative suits just as they were able to do at common law, stating that "[n]othing in this Act shall be construed to affect any pre-existing common law right of a voting member to bring an action *** in the right of such corporation." 805 ILCS 105/107.80 (West 2016). The defendants argue that, by including language in section 108.35 that members can only seek the removal of directors if they hold more than 10% of the votes, the legislature meant to preclude members holding fewer votes from bringing derivative suits to remove directors. Citing the maxim that when there is a conflict between statutory provisions, the more specific provision should be applied, the defendants argue

that, although section 107.80 protects members' general right to bring derivative suits, section 108.35 is a more specific provision that restricts that right—or at least restricts the remedies available in a derivative suit, which should not include the removal of directors.

¶ 27 This is a misreading of section 108.35. The legislature did not restrict the ability to sue for removal of directors to only those members holding more than 10% of the votes, it also permitted such actions to be brought "by the corporation"—a term that, as we have discussed, includes derivative actions. Thus, the plain language of the statute permits the filing of such actions either as derivative suits *or* by members on their own behalf, if the plaintiff members hold more than 10% of the votes. We note that the Business Corporation Act of 1983 has a similar provision stating that suits to remove corporate directors can be brought either by the corporation or by shareholders of a corporation holding at least 10% of the outstanding shares of any class. 805 ILCS 5/8.35(b) (West 2016). While derivative suits by shareholders/members seeking to remove directors are rare, they exist. See, *e.g.*, *Weis v. E.&G. Weis Farms, Inc.*, 2019 IL App (5th) 108503-U, ¶ 12 (minority shareholder of for-profit corporation filed action seeking removal of directors, among other relief).

¶ 28 The plaintiff here could not bring suit to remove Granholm and Salamone on its own behalf because it does not hold 10% of the votes. But nothing in the Act precluded it from filing a derivative action to remove them. Accordingly, the trial court erred in concluding otherwise.[2]

---

[2]We also note that the trial court proceeded unwisely by basing its decision on an issue that, so far as we can tell, it raised *sua sponte* at the hearing. Neither party had previously raised or briefed the issue of whether the Act permits derivative suits to remove directors. Such excursions into matters not raised or briefed by the parties run the risk of transforming a court from an arbiter to an advocate (see *People v. Rodriguez*, 336 Ill. App. 3d 1, 14 (2002)), and may violate

¶ 29                    C. Dismissal of Counts I and II—Mootness

¶ 30    The defendants next argue that, even if the trial court's determination that the Act did not permit derivative suits was erroneous, we should uphold the trial court's dismissal of counts I and II because those claims are moot. They contend that, because there were three annual board elections since 2017 as to which the plaintiff alleged no wrongdoing, and Granholm and Salamone were reelected to the board each time, the claims seeking removal of those directors are moot. The defendants fail to show that this is so, however.

¶ 31    "An appeal is moot if 'no actual controversy exists or if events have occurred that make it impossible for the reviewing court to grant the complaining party effectual relief.' " *In re Marriage of Eckersall*, 2015 IL 117922, ¶ 9 (quoting *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 291 (2005)). But the defendants have not cited a single legal authority suggesting that the passage of time, or the fact of reelection in and of itself, makes it impossible for the court to order the removal of directors pursuant to section 108.35. This lack of reasoned argument or pertinent legal authority would justify our finding their argument forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) (where a party does not offer any argument or meaningful authority in support of that argument, the argument is forfeited); *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56 (same). Even if it were not forfeited, though, their argument has no merit.

¶ 32    Section 108.35 of the Act provides that a court may order the removal of a board director if the trial court finds that "(1) the director is engaged in fraudulent or dishonest conduct or has grossly abused his or her position to the detriment of the corporation, and (2) removal is in the best

the parties' due process rights to notice and an opportunity to be heard on the issues forming the basis for decision (see *Oak Grove Jubilee Center, Inc. v. City of Genoa*, 347 Ill. App. 3d 973, 978-79 (2004)).

interest of the corporation." 805 ILCS 105/108.35(d) (West 2016). Nothing in this section restricts the court's power to grant these remedies if the directors were reelected after their alleged misconduct. Thus, we may not read such a limitation into the Act. *J.S.A.*, 224 Ill. 2d at 197 ("[w]e will not depart from the plain language of a statute by reading into it exceptions, limitations or conditions that conflict with the express legislative intent"). Nor does a common-sense reading of the statute require such a limitation. We can easily imagine that directors could take actions that were such a betrayal of their fiduciary duties toward the corporation that their continuing fitness to serve as directors could be justifiably questioned, despite their reelection by members who may or may not have known of that misconduct.

¶ 33    For all of these reasons, we reject the defendants' arguments regarding counts I and II. We vacate the dismissal of counts I and II and remand for further proceedings.

¶ 34                    D. Dismissal of Count III—"Subsidiary Body"

¶ 35    The trial court dismissed count III—the plaintiff's claim that the defendants violated FOIA—on the basis that Aurora Downtown was not a "subsidiary body" of a public body and thus was not within the scope of FOIA. But the trial court lacked sufficient evidence at this stage for this factual finding and its determination was premature. Accordingly, its dismissal of count III cannot stand.

¶ 36    The legislature enacted FOIA to ensure that "[e]ach public body shall make available to any person for inspection or copying all public records." 5 ILCS 140/3(a) (West 2016). As defined in FOIA, "public body" includes the following categories relevant here: "all legislative, executive, administrative, or advisory bodies of *** cities *** and all other municipal corporations, boards, bureaus, committees, or commissions of this State, [and] any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees thereof." *Id.* § 2(a). The

plaintiff does not contend that Aurora Downtown falls within one of the enumerated bodies of government, instead asserting that it is a "subsidiary body" of the City of Aurora.

¶ 37    A "subsidiary body" may be either public or private. Our supreme court has adopted the following factors for determining whether a private entity is a "subsidiary body": "(1) the extent to which the entity has a legal existence independent of government resolution, (2) the degree of government control exerted over the entity, (3) the extent to which the entity is publicly funded, and (4) the nature of the functions performed by the entity." *IHSA*, 2017 IL 121124, ¶ 26. The supreme court continued, "We emphasize that no single factor is determinative or conclusive, but as the definition indicates, the key distinguishing factors are government creation and control." *Id.*

¶ 38    The determination of whether a particular organization is a subsidiary body turns on the evidence presented with respect to each factor. See *id.* ¶ 34 ("whether a private entity could be deemed a subsidiary body under the FOIA requires a case-by-case consideration" of the four factors). Such a factual inquiry generally should not be resolved at the pleading stage, where the facts alleged in the complaint and any affirmative defenses have not yet been proven. This appeal is an example of the problems created by proceeding in the absence of sufficient evidence.

¶ 39    In its complaint, the plaintiff alleges that "Aurora Downtown was created pursuant to the SSA No. 1," a special taxing district created by Aurora city ordinance, and "is charged with utilizing the SSA No. 1 tax revenue." The complaint further alleges that

> "SSA No. 1 specifically identifies Aurora Downtown as an agency of the City of Aurora, and at all relevant times Aurora Downtown openly acknowledged it operate[s] as an advisory body to the City of Aurora with the purpose of implementing the projects of the City as laid out in the SSA No. 1."

Finally, the complaint alleges that "Aurora Downtown derives all of its powers from the City of Aurora, must seek the City's approval for its projects and endeavors and is ultimately controlled

by the City." If proven, these allegations would establish facts supporting the conclusion that Aurora Downtown is a subsidiary body subject to FOIA.[3]

¶ 40    The defendants object that the plaintiff "has presented no evidence or ordinance to demonstrate" that its allegations are true. This misconstrues the plaintiff's burden at this point, however. Discovery has not yet occurred in this case. The trial court dismissed the FOIA claim pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)). When considering a motion to dismiss brought under that section, we must assume that well-pleaded allegations of fact in the complaint are true, although we do not make the same assumption about conclusions of law or conclusory factual allegations unsupported by allegations of specific facts alleged in the complaint. *IHSA*, 2017 IL 121124, ¶ 21. The complaint here alleges specific facts, however, and thus—at this pleading stage of the proceedings—we must take them as true, even if the plaintiff has not presented evidence to back them up. In line with the reality that determining whether a private body is a subsidiary body under FOIA is fact-dependent, the relevant case law reveals that far more evidence was considered in those cases than was presented here. See, *e.g.*, *id.* ¶ 11 (parties presented not only organization's governing documents but also detailed affidavit testimony of its executive director and pertinent previous legal opinions concerning the nature of the organization); *Rushton v. Department of Corrections*, 2019 IL 124552 (decided on summary judgment rather than at the pleading stage); *Chicago Tribune v. College of Du Page*, 2017 IL App (2d) 160274 (same); *Board of Regents of the Regency University System v. Reynard*, 292 Ill. App. 3d 968 (1997) (appeal following bench trial); *Hopf v. Topcorp, Inc.*, 256 Ill. App. 3d 887 (1993) (appeal of summary judgment); *Rockford Newspapers, Inc. v. Northern Illinois Council on Alcoholism & Drug Dependence*, 64 Ill. App. 3d 94 (1978) (appeal of summary judgment). *Cf. Better*

---

[3]Of course, we are not making such a determination here.

*Government Ass'n v. Metropolitan Pier & Exposition Authority*, No. 126790 (Ill. Mar. 24, 2021) (supervisory order) (vacating the appellate court decision and directing the appellate court to remand the case to the circuit court "to develop the evidentiary record necessary for a fact specific inquiry" relating to coverage of a document request under FOIA). The trial court erred in attempting to determine whether Aurora Downtown qualifies as a subsidiary body at the pleading stage and on the sparse record presented.

¶ 41 The defendants argue that Aurora Downtown has an independent legal identity, as it is a duly organized private not-for-profit corporation. But this fact alone cannot establish that it is not a subsidiary body under FOIA. See, *e.g.*, *College of Du Page*, 2017 IL App (2d) 160274, ¶ 50 (private not-for-profit corporation was performing a governmental function on behalf of a public body and thus was subject to FOIA). As this fact is not dispositive, it cannot justify the trial court's entry of judgment on count III. The defendants also assert that the plaintiff was required to identify the specific documents to which it was denied access, but they fail to cite any pertinent legal authority and thus have forfeited this argument. We vacate the dismissal of count III and remand for further proceedings.

¶ 42                                     III. CONCLUSION

¶ 43 The judgment of the circuit court of Kane County is vacated and the cause is remanded for further proceedings consistent with this opinion.

¶ 44 Vacated and remanded.

*River Breeze, LLC v. Granholm*, **2022 IL App (2d) 210704**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 20-CH-376; the Hon. Kevin T. Busch, Judge, presiding. |
| **Attorneys for Appellant:** | Colin W. Anderson, of Anderson & Uddin, P.C., of Aurora, for appellant. |
| **Attorneys for Appellee:** | Elizabeth M. Bartolucci, of O'Hagan Meyer LLC, of Chicago, for appellees. |